[redacted]

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, Sc. SUPERIOR COURT

STATE OF RHODE ISLAND )
)
VS. ) P1/00-3867A
)
EDWARD VASHEY )

HEARD BEFORE

THE HONORABLE WILLIAM A. DIMITRI, JR.

ON TUESDAY, DECEMBER 4, 2001, WEDNESDAY, JANUARY 16, 2002

AND [redacted]

APPEARANCES:

JOHN J. McMAHON, ESQUIRE,
Department of the Attorney General...FOR THE STATE

MARK L. SMITH, ESQUIRE........FOR THE DEFENDANT ON
12/4/01 AND 1/16/02

ALTON WILEY, JR., ESQUIRE.....FOR THE DEFENDANT ON
9/15/03

2004-175-C.A.

2 vol.

KATHLEEN L. MURRAY
COURT REPORTER

C E R T I F I C A T I O N

I, KATHLEEN MURRAY, hereby certify that the succeeding pages 1 through 20, inclusive, are a true and accurate transcript of my stenographic notes.

Kathleen L. Murray

KATHLEEN L. MURRAY
Court Reporter

**TUESDAY, DECEMBER 4, 2001**

**MORNING SESSION**

THE CLERK: Please, state your name for the record.

THE DEFENDANT: Edward Vashey.

THE CLERK: Your address?

THE DEFENDANT: ACI.

THE CLERK: Your date of birth?

THE DEFENDANT: 3/1/66.

THE CLERK: Waiving the reading of this Indictment, P1/00-3867, charging one count of first degree child molestation.

Does the State have a motion?

MR. McMAHON: It does, your Honor. After conference, the State has agreed to move to amend the charge from first degree to second degree.

THE COURT: Any objection to the amendment, Mr. Smith?

MR. SMITH: No, your Honor.

THE CLERK: What say you to the amended charge?

MR. SMITH: Judge, we have had numerous conferences concerning this case with myself and Mr. McMahon, as well as your Honor, in chambers. Mr. McMahon and I have agreed to a disposition in so far as this case is concerned. Mr. Vashey is aware of the fact, after we discussed this a few times out at the prison, the facts

that the State has which they intend to introduce against him. He's aware of the fact that if twelve individuals, who were chosen as the jury, were to believe that the State could prove this case against him beyond a reasonable doubt, he could be found guilty.

With that in mind, I have explained to Mr. Vashey the theory of North Carolina vs. Alford, which, in essence, is an individual is exposed to a substantial risk, and as a result of that risk, he will admit that a jury could find him guilty. However, he himself is not going to indicate that he's going to plead nolo or that he's going to plead guilty. He is merely suggesting to this Court that the facts and circumstances to be recited by Mr. McMahon could be believed by twelve individuals, a jury, beyond a reasonable doubt.

Is that correct, Mr. Vashey?

THE DEFENDANT: That's correct, Mr. Smith.

THE COURT: The appropriate way to do this, Mr. McMahon, is to present the facts on the record.

First of all, let me ask Mr. Vashey some questions.

Mr. Vashey, in spite of the fact the Court is going to accept a plea pursuant to North Carolina vs. Alford, do you understand that if you violate the conditions of your probation, which is going to be for fifteen years, you could be brought back to this Court as a violator,

you'd be entitled to have a hearing. You could be sentenced to the ACI for a period of fifteen years if a judge is reasonably satisfied that you violated the terms of your fifteen-year suspended sentence.

Do you understand that, sir?

THE DEFENDANT: I understand that.

THE COURT: To proceed in the appropriate manner, would you place the facts on the record, please?

MR. McMAHON: The State, in this case, would have relied on the same evidence it presented at a violation hearing in July of 2000. A violation hearing after which a judge of this court found the young complainant to be credible and adjudged the defendant a violator. The complainant in this case, whose name I won't mention on the record because of her age, is under the age of fourteen, and she testified then and we would anticipate she would testify again that on one instance, there was a time when there was a contact of a part of her body of a sexual nature by the defendant; that part being her groin area, vaginal area, and with the inference being that the contact was for his own gratification. She did indicate in the video tape that he did stop immediately when she asked him to.

Now, the original charge was first degree child molestation, now amended to second degree.

THE COURT: Do you acknowledge, sir, that if that evidence were presented by the State to a jury that that would constitute sufficient proof of guilt beyond a reasonable doubt, if a jury accepted that evidence? Do you acknowledge that, sir?

THE DEFENDANT: I don't understand. I was under the impression I was pleading an Alford plea, so I wasn't admitting to anything.

THE COURT: Yes. The Alford plea is this, Mr. Vashey. You're maintaining your innocence. However, you have to acknowledge that if those facts presented by the State, as indicated by Mr. McMahon, were believed by a jury of twelve, they could possibly find you guilty of that offense of second degree child molestation. That's what this is all about.

THE DEFENDANT: I understand that if he presented the case and they did believe that, then I could be found guilty of it, correct. I understand that.

THE COURT: You understand that now?

THE DEFENDANT: Yes, I understand that.

THE COURT: Do you have any question about that?

THE DEFENDANT: No.

THE COURT: Do you understand that you have a right to have a trial in this case. That trial would be either before a judge and a jury of twelve or a judge sitting

alone.

Do you understand that?

THE DEFENDANT: I understand that.

THE COURT: You understand that a jury of twelve would have to unanimously agree, if it accepted those facts, that the State has proven your guilt beyond a reasonable doubt?

Do you understand that?

THE DEFENDANT: I understand that.

THE COURT: Do you understand that you would also have the right, Mr. Vashey, to have Mr. Smith, on your behalf, cross-examine and confront the witnesses against you?

Do you understand that, sir?

THE DEFENDANT: I understand that.

THE COURT: By entering this plea pursuant to the Alford case, you're giving up that right.

Do you understand that, sir?

THE DEFENDANT: I understand.

THE COURT: You're also giving up the right to present any evidence, testimony or witnesses in your own behalf during the course of that trial, if that trial was taking place.

Do you understand that, Mr. Vashey?

THE DEFENDANT: I understand.

THE COURT: Also, Mr. Vashey, you're giving up the right to any appeal from the sentence that the Court is going to impose today once the Court accepts your plea.

Do you understand that, sir?

THE DEFENDANT: I understand.

THE COURT: You're also entitled to have a presentence report, Mr. Vashey. That report would be, in essence, a history of your background, your occupation, education, family, that the Court could consider in imposing a sentence if you were found guilty in this case.

Do you understand that, sir?

THE DEFENDANT: I understand.

THE COURT: You're giving up the right to that report.

Do you understand that, sir?

THE DEFENDANT: I understand.

THE COURT: Lastly, Mr. Vashey, had that case gone to trial, as I indicated to you earlier, the State would have to prove each and every element of the offense of second degree child molestation before the jury, if they believed the evidence, could find you guilty.

Do you understand that, sir?

THE DEFENDANT: I understand.

THE COURT: The Court finds the defendant has the

capacity and understanding to enter this plea; that he does so voluntarily, intelligently, with full knowledge and understanding of its implication. The Court accepts the plea pursuant to North Carolina vs. Alford, 400 US 75.

Mr. Vashey, is there anything you wish to say?

THE DEFENDANT: No, your Honor.

THE COURT: Mr. Smith, do you have anything to add?

MR. SMITH: Judge, in accordance with the requirements, Mr. McMahon indicated that he wants a no-contact order with this child. I understand that that's always been the State's position. I'm just explaining that he can't have any contact with this child either directly or indirectly. However, when the child becomes of a certain age, if she desires to have contact, she can come back here and indicate she is desirous of having the no-contact order removed.

THE COURT: Mr. Vashey, the Court has agreed to impose a sentence of fifteen years. I'm going to suspend that sentence and place you on fifteen years probation.

Do you understand that, sir?

THE DEFENDANT: I understand.

THE COURT: Do you understand -- I think I mentioned this to you before -- do you understand that during that fifteen-year period, if you violate that probation, you

could be brought back to this Court. You'd be entitled to have a hearing, and after that hearing, if the judge is reasonably satisfied you violated your probation, you could be sentenced to serve the fifteen years at the ACI.

Do you understand that, sir?

THE DEFENDANT: I understand.

THE COURT: The Court is also going to order a no-contact order, which Mr. Smith just alluded to.

Do you understand that, sir?

THE DEFENDANT: I understand.

THE COURT: Mr. McMahon, did the victim wish to be heard?

MR. McMAHON: They opted not to appear in court. They asked me to call them if, in fact, a disposition was held. I did speak to the mother about an hour ago, and given the fact the child did not have to testify at the trial, she was satisfied with the disposition.

THE COURT: On P1/2000-386 -- Is that a 4 or a 9?

MR. SMITH: I'm sorry, Judge. P1/00-3867.

THE COURT: Seven. Okay. You don't mind if I change it on here, do you?

MR. SMITH: No, sir.

THE COURT: On the amended charge of second degree child molestation, it is the sentence of the Court that you be sentenced to the ACI for fifteen years. That

sentence is suspended. You are placed on fifteen years probation.

All the statutory requirements, which I understand have been explained to the defendant, will apply. Am I correct?

MR. SMITH: Yes, your Honor, you are.

THE COURT: A no-contact order will issue.

Good luck to you.

MR. SMITH: Thank you, your Honor.

THE DEFENDANT: Thank you, your Honor.

(HEARING CONCLUDED)