**WEDNESDAY, JANUARY 16, 2002**

**MORNING SESSION**

THE CLERK: Please state your name for the record.

THE DEFENDANT: Edward Vashey.

THE CLERK: Your date of birth?

THE DEFENDANT: 3/1/66.

THE CLERK: Defendant is before this Court on P1/00-3867 on a motion to vacate plea.

THE DEFENDANT: May I speak, your Honor?

MR. SMITH: Judge, there's also a motion for me to withdraw. And after I received some correspondence, without breaching the attorney/client privilege, Mr. Vashey said he was dissatisfied, doesn't want me to do anything on his behalf. So, I would ask permission to withdraw as a result of that correspondence.

THE COURT: Once this case was disposed of, as far as I'm concerned, on December 4th, your responsibility to this defendant, unless there was an appeal of some sort, your responsibility is over. I don't even know why you're here, although I did receive a motion from you to vacate the plea. If you want to argue on behalf of Mr. Vashey, if he wants you to do that, fine; if he doesn't, your motion to withdraw is granted.

MR. SMITH: Thank you. I may be excused?

THE COURT: Certainly.

THE DEFENDANT: I'd like to ask the Court for permission to withdraw that motion before any arguments are heard on that. I do not wish to argue any point of that motion.

THE COURT: You want to withdraw it?

THE DEFENDANT: Yes, I do.

THE COURT: Your motion is withdrawn, Mr. Vashey. Thank you.

(COURT ADJOURNED)

[redacted]

MORNING SESSION

THE CLERK: Please state your name.

THE DEFENDANT: Edward Vashey.

THE CLERK: Your date of birth?

THE DEFENDANT: 3/1/66.

THE CLERK: Defendant is before this Court on P1/00-3867 on a motion to vacate a plea.

THE COURT: Mr. Wiley.

MR. WILEY: Thank you, your Honor. Your Honor, I filed this motion on behalf of Mr. Vashey. Mr. Vashey entered an Alford plea to a charge of second degree child molestation back on December 4, 2001. Mr. Vashey maintains that at the time he entered the Alford plea, that he was never informed by Attorney Mark Smith of certain consequences of the plea; specifically, that he would be subject to sex offender registration for a period of fifteen years. He was sentenced to fifteen years suspended, fifteen years probation at the time. And he was also not informed he would be under the supervision of the parole board for fifteen years. During the entry of his plea, your Honor, there was colloquy between your Honor and Mr. Smith in which you had stated, you had asked, "All the statutory requirements, which I understand have been explained to

the defendant, will apply. Am I correct?" And Mr. Smith answered, "Yes, your Honor, you are." This is the only reference to sex offender registration. It is not a specific reference, just a general mention of statutory requirements.

Also, Mr. Vashey wrote a letter to Attorney Smith two days after he entered his plea, asking to vacate his plea. Attorney Smith responded by filing a motion to withdraw. Attorney Smith's motion was granted, and Mr. Vashey was left without an attorney to pursue a motion to vacate the plea. Mr. Vashey also maintains that Attorney Smith informed him that if he pled to the substantive charge, the State would not be able to use it against him in his appeal that he had pending regarding a violation, which he had already been sentenced on, which this charge, I guess, was the basis of that, the basis of that violation. The State later -- later the State did use the issue of his plea against him in arguing against his appeal.

Basically, your Honor, based on these grounds, Mr. Vashey prays that his motion be granted and his Alford plea be vacated. I believe Mr. Vashey may want to address the Court.

THE COURT: Before we get to that, I want to clear the record. Mr. Smith did, in fact, file a motion to

vacate the plea on December 3rd on behalf of the defendant. That was prior to his withdrawing from the case. What's strange about it, however, is I took the plea on the 4th, and -- 4th of December, and the motion to vacate by Mr. Smith appears to have been dated the 3rd. That may be an error. Nevertheless, I'll hear you, Mr. McMahon.

MR. McMAHON: If the Court please, [redacted] This is nothing more than a defendant who shot himself in the foot, figuratively, on his own behalf, got back to the prison, figured out the math, and then is now recalcitrant. The State -- Let me back up.

In July of 2000, in P2/94-926, Mr. Justice Nugent found the defendant to be a violator based on these facts, and sentenced him to five years. When the case came up for trial, the case was reached and negotiations were ongoing. This nine-year-old girl testified at the violation hearing. The State did not want her to have to testify again, and the State made an offer of fifteen years, five to serve. The counteroffer that came back from the defendant specifically was that he would not take any time, even concurrent time, and he would only take a fifteen-year suspended sentence. Well, the

State did the math in its head, was satisfied that that's an even better recommendation than the State's original offer and agreed, because we ended up with a fifteen-year suspended sentence instead of the ten that the fifteen-five would have given him. So, the State was satisfied. This was at the defendant's request, insistence. So, the plea went through before your Honor. It was quite clearly an Alford plea. It's marked on the Banner sheet as an Alford plea. The Court was very scrupulous in going through the defendant's rights and satisfied that also, though the defendant was maintaining his innocence, he was doing this in his best interests, which is the cornerstone of a North Carolina vs. Alford plea.

Having said that, the defendant's, we would submit to the Court, attempting to vacate the plea after the Court accepted it and imposed the sentence is untimely [redacted] because once the sentence is imposed, according to the Supreme Court in Williams, it's too late. But even [redacted]

[redacted] under Rule 11 of the Rhode Island Superior Court Rules of Criminal Procedure, the case law indicates that a defendant has a prima facie duty under Johnson vs. Mullen, 390 A.2d, 909, 1979 case, to point out where in the record the Court did not comply with its constitutional requirements under a Rule 11 colloquy. The defendant concedes in the very motion he filed with the Court that he understood everything. It was a change of mind. I submit it was actually a lucid moment where the mathematics actually hit him. In any event, in his motion, he says, "I realize I'm innocent. I just want to go to trial." Well, that's belied by Mr. Justice Nugent's findings and the fact that an Alford plea under Rhode Island state law is a completely valid plea. In State vs. Feng, 421 A.2d 1258, a 1980 case, the Supreme Court went on at great length at what must be reviewed by a court when an allegation of improper plea is taken. Here, all the requirements were met. The Court specifically noted it was an Alford plea. The plea form itself specifically notes that its an amendment from first degree child molestation to second degree child molestation, and all statutory requirements are part of the disposition, as is a matter of law. And this Court actually inquired whether or not those explanations had been given.

The State would submit, your Honor, that a fair trial means fair to both sides. The fact that this defendant had a change of mind is not grounds, and it would be unfair to the complainant, the nine-year-old girl in this case who has been able to put this behind her, for the Court to vacate an otherwise completely proper negotiated disposition.

I respectfully request the Court deny the motion.

THE COURT: Mr. Vashey.

THE DEFENDANT: First of all, I'd like to say that throughout this whole ordeal and throughout my being represented by Mr. Smith, never once until December 4th did we ever discuss my taking a plea. I have with me at least between fifteen and twenty letters I wrote to Mr. Smith, and probably fifteen letters Mr. Smith responded to me over the year he represented me, and not one of them discussed a plea. Me and Mr. Smith never discussed a plea until December 4th. In fact, the last letter that I wrote him and the last time I seen him, the last letter was November 6th prior to me taking that deal, and I expressed explicitly my need to see this through, to go to trial. From the beginning, I have always maintained my innocence; I always have. I'm innocent of this. I wanted to go to trial. December the first or second, Mr. Smith came to see me. I gave him a

list of witnesses that I wanted him to submit to the Court for my witness list. I gave him ten people that I wanted a court-appointed investigator to speak to. On that day, Mr. Smith came to see me, he took me up to a courtroom, I'm sure that's what it was, and he sat me down, and he says, "Listen, I have to tell you that they have offered you fifteen years, five to serve, ten suspended." I said, "I told you all along we are going to trial." He tried to explain to me it would be the best thing, and it would be -- I said, "Listen, I'm not taking anything." He said, "How about if I go and ask if you could just take fifteen years suspended?" I said, "I don't want to take anything." He said, "Let me see." He came back and said the State agreed to that.

THE COURT: But you entered a plea. Were you sick at the time? Were you sick?

THE DEFENDANT: I was never made aware of the consequences of that.

THE COURT: Mr. Vashey, I'm quite sure I went over your rights with you, and I asked you whether you were under the influence of any medication that would affect your judgment that day. I'm quite sure your response was, "No." Now, you entered a plea voluntarily and intelligently. I made that finding. And the Court did in this case what it doesn't normally do. I took an

Alford plea, and I know I went over the Alford plea with you, before I accepted your plea, very carefully. From what I see here, the reason why you entered this plea, according to what I read in the file, is because you were in fear that you were going to be found guilty, and I questioned you about that during the course of taking the plea. That's the reason why an Alford plea was taken in this case.

I didn't mean to interrupt you, but I'll hear you.

THE DEFENDANT: Well, your Honor, my argument is I was never properly informed of the consequences of this plea. Mr. Smith never sat down with me, and like I said, I was brought into a courtroom, sat down for ten minutes with him, and him and Mr. McMahon went back and forth. They came over, and I still said no. Then they brought me downstairs. He came down. I was thinking about it. I was saying, "It's just fifteen years suspended. I'm not going to get in trouble." That was all I was told. I wasn't told I'd have to be registered as a sex offender or I'd be under the control of the probation board. I had an appeal pending. I said, "Listen, I ain't taking anything because I have an appeal pending, and I plan to take that to it's fruition. I think I got a raw deal at the violation hearing," and I says, "I'm pursuing that appeal. If this will have anything to do with it, I'm

not taking it." He told me, "No. They can't use that against you."

THE COURT: You were already violated by that time?

THE DEFENDANT: Yes.

THE COURT: You were violated.

THE DEFENDANT: Yes, and I had an appeal pending.

THE COURT: I have your plea form dated December 4, 2001. And over your signature is the language, "I have discussed the entire contents of this form" -- your plea form -- "with my attorney, who has explained it to me. I have no questions as to what it states and means. I understand it completely. I swear to the truth of the above."

Now, were you lying at that time?

THE DEFENDANT: No, I was, I was lied to by Mr. Smith.

THE COURT: Were you lying to the Court at that time?

THE DEFENDANT: When I signed that plea?

THE COURT: Yes.

THE DEFENDANT: I wasn't lying to the fact what I was meant to understand that taking the plea meant.

THE COURT: Motion to vacate is denied.

MR. WILEY: Please note my exception, your Honor.

THE COURT: Certainly. (HEARING CONCLUDED)